

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | CASE NO. 4:11CR67 |
| v. | § | |
| | § | |
| TRAVIS HUNTER BLANK | § | |

## ORDER AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENT

This matter having been referred by the Honorable Richard A. Schell, the Court has considered Defendant's Motion to Suppress Statements and Evidence Fourth and Fifth Amendment Violations (Dkt. 19). After considering the evidence presented and the arguments of counsel at the hearing held on May 23, 2011, the Court finds that the motion should be DENIED.

Defendant Travis Hunter Blank is charged in this matter with transportation of child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1) and possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). In his motion, Defendant seeks to suppress statements he made to law enforcement on May 18, 2009 as well as all evidence collected during the search of his home and any recordings of phone calls he made to family members while incarcerated.

Defendant seeks to suppress on two grounds. First, Defendant argues that the affidavit in support of the search warrant for his home lacked sufficient particularity as required by the Fourth Amendment. Defendant argues that the warrant did not specify the files to be seized, the computer to be seized, or mention the Sprint Air Card which was seized. Defendant also contends that there were false or misleading statements in the affidavit which claimed that the Defendant "intentionally and knowingly caused video images of *children* engaged in sexual acts..." and that he believed the Defendant to be a "collector[s] of such files" (emphasis added). Dkt. 25-2. Defendant claims that the video reviewed depicted conduct with a minor *child* – not children – and that the viewing of one such video does not a collector make.

As his second grounds to suppress the evidence seized and statements made, Defendant argues that the statements he gave to law enforcement during the search of his home were improperly obtained without advising him of his *Miranda* rights.[1] Defendant argues that he was concerned for the safety of a minor in his home and did not feel free to leave or terminate the interview.

The Government filed a written response in opposition to Defendant's arguments as well as an Unopposed Motion for Extension of Time to File the response (Dkt. 21). As to the response to the motion to suppress, the motion for extension of time is GRANTED and the Court has considered both the written response and the arguments and evidence presented at the hearing.

---

[1]Defendant also seeks to suppress any jailhouse recordings made after his arrest, but clarified at the hearing that this is only under a derivative theory of fruit of the poisonous tree and not an independent legal basis.

**FACTUAL BACKGROUND & EVIDENCE PRESENTED**

All parties agree that, on May 18, 2009, Defendant's home was searched after the issuance of a search warrant by a state court judge and that Defendant was questioned for 45 minutes to an hour by Detective Jeff Rich in the bedroom of his house during the execution of the warrant. All parties further agree that Defendant was never formally placed under arrest on the evening in question. The circumstances surrounding the issuance of the search warrant and Defendant's statements are, however, highly disputed. Thus, the Court has reviewed written briefs submitted by each party and considered the arguments and evidence presented at the May 23, 2011 hearing.

At the hearing, the Government presented the testimony of Detective Jeff Rich, the officer who obtained and executed the warrant to search Defendant's home and the officer who questioned Defendant. According to Rich and the Government's briefing, around March, 25, 2009, an electronic mail containing a video clip of a minor male engaging in sexual intercourse with an adult male was sent from the email address, stussy32@aol.com. AOL sent the video clip to the National Center for Missing and Exploited Children (NCMEC), and NCMEC forwarded the information to Detective Lori Rangel of the Dallas Police Department's Internet Crimes Against Children Unit who then contacted Rich. Both Rangel and Rich viewed the video clip and concluded that it constituted child pornography. A warrant was served on AOL to obtain the subscriber information. The subscriber was listed as Stanley Jensen, Defendant's father, on 3321 Brookshire Drive, Plano, Texas. Rangel obtained a court order for Sprint to provide the subscriber information for the user of the login IP address connected to the AOL account. According to Rich, Sprint confirmed that

3

Defendant was the user of this IP address. Detective Rich explained that he did not mention the Sprint Air Card in the search warrant affidavit because he had no knowledge that it was being used. He only knew that a Sprint Internet connection was being used to transmit the child pornography. Rich later explained that the Air Card was seized because it was connected to the computer at the time the warrant was executed.

Drawing from this information, Rich submitted the affidavit, requesting a search warrant for Defendant's home. The warrant was issued by Collin County District Judge Rusch.

When questioned about the contents of the affidavit, Detective Rich testified that the use of the word "children" was a typographical error and was intended to reference the video of sexual acts with a single "child." Rich further testified that, based on his experience, it was common for individuals who possessed child pornography to be collectors of the material, explaining why he referred to Defendant as a "collector" even though the affidavit was based on a single video clip.

According to Rich, he was in Defendant's home for a couple of hours to execute the search warrant. Rich testified that, when he executed the search warrant, he had no weapons drawn, nor did the other two police officers who accompanied him. While two other police officers conducted a pre-search on the other computers in the home, Rich interviewed Defendant in Defendant's bedroom. Defendant's family remained in other rooms of the house with the officers searching the family computers. Rich explained that the pre-search of the family computers was conducted onsite so that they could be left with the family if no pornography was found on them.

According to Rich, Defendant was sleeping when he entered the room. Rich asked Defendant if it was alright if they talked in the bedroom and Defendant agreed. Rich testified that he told Defendant multiple times that he was free to leave the room. and that he was not under arrest or required to speak to him. According to Rich, Defendant, although he had been sleeping, did not appear to be under the influence of any substance. Rich testified that he confirmed this by asking Defendant whether he was taking any medications or drugs and that Defendant told him he was not. Rich characterized their conversation as cordial. Rich testified that he did not yell at Defendant or make any threats. According to Rich, Defendant then voluntarily admitted to having viewed child pornography. Rich stated that Defendant could have left the house or stopped talking to him at any time during the interview.

Rich stated that, at the end of the interview, Defendant voluntarily filled out a voluntary written statement indicating that he had viewed thousands of child pornography images over the past ten years. Rich testified that, he used the form with "Subject Not Under Arrest" printed at the top since Defendant was not under arrest. Dkt. 25-1. Rich stated that Defendant filled out the entire form in his own handwriting and initialed all of the boxes which described Defendant's *Miranda* rights. At that time, Defendant also provided Rich with the password to his computer, which Rich wrote on the back of the written statement form. Rich denied that he told Defendant that he was required to fill out the form since he already had spoken to him about his problems with child pornography.

According to Rich, he also explained to Defendant that Child Protective Services may call him regarding the minor exchange student, L.A., who was living in his home. He described his comment as simply a notification to Defendant as to his obligations when a minor child was involved. Rich denied the implication that such a warning was intended to be a veiled threat of L.A.'s forced removal from Defendant's home. Detective Rich also stated that he noticed numerous pictures of L.A. on one of the Defendant's bedroom walls and asked Defendant about the nature of his relationship with L.A. Rich explained that he asked about L.A. in conjunction with his child exploitation investigation. Detective Rich testified that he did not forcibly prevent Defendant from seeing L.A. while the warrant was being executed.

In addition to introducing into evidence the affidavit, the search warrant, and Defendant's voluntary statement form, the Government also produced a photograph of Defendant sitting on his bed on the evening of the search, with a pen in his hand and a yellow form in the other hand. Detective Rich stated that this form was the voluntary statement form signed by Defendant. Both sides agreed that the photo was taken at the end of the interview.

Defendant also testified at the hearing. According to Defendant, Detective Rich woke him up and told him he had a search warrant for child pornography and began to question him in his bedroom. Defendant stated that he asked if he could leave the bedroom, and Rich told him that he could not. Defendant said that he asked to see the search warrant and Rich told him "not now." Defendant testified that he took medication before bed at night, specifically a muscle relaxer and "hypercodeine," which made him drowsy.

According to Defendant, Rich never read him his *Miranda* rights but Rich did tell him he was a suspect. He claimed that, after the questioning, Rich told him he should fill out a voluntary statement form because he had already told him everything orally. Defendant testified that what he wrote on this voluntary written statement was false. He explained that he was not thinking clearly and was concerned for L.A., his fifteen year-old ward, who was in the other part of the house.[2]

Defendant also testified that he felt that he was in custody since Rich was armed, although he does not allege Rich ever brandished his weapon or removed it from its holster. Defendant conceded that he was never yelled at and was never handcuffed. He also stated that he never asked for a lawyer. And, Defendant agreed that Detective Rich's tone during the interview was cordial. Nonetheless, although he conceded that Rich didn't "make him write it," Defendant stated that he felt coerced into completing the voluntary statement.

## **ANALYSIS**

The Court first addresses Defendant's argument that the search warrant was invalid. Probable cause is necessary to support the issuance of a valid search warrant. *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007). "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *United States v. Daniel,* 982 F.2d 146, 151 (5th Cir. 1993). Rather, probable cause is determined through an examination of a totality of the circumstances. *U.S. v. Fields*, 456 F. 3d 519, 523 (5th Cir. 2006). Thus, in determining the

---

[2]Rich testified that he did not forcibly keep Defendant from L.A. and that he never threatened that L.A. would be taken away.

validity of a search warrant, a court must "make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found at a particular place." *United States v. Froman,* 355 F.3d 882, 889 (5th Cir. 2004) (citations omitted).

The Court finds that, having heard the testimony of Rich, the affidavit to search Defendant's home was valid. Detective Rich explained that the use of the word "children" in his affidavit was a typographical error, and the Court finds that – regardless of whether the image were of a child or children – the statement about a video clip would form probable cause of a crime involving child pornography.[3] As noted by the Government, the video is thoroughly described in an earlier paragraph of the affidavit which states that the email contains "a video clip of a 12-15 year old boy engaging in sexual intercourse with an adult male." Dkt. 25-2 at 2. This evidence sufficiently created a fair probability that child pornography would be found at Defendant's home.

As to Defendant's argument regarding the seizure of the Air Card, the Court finds that it fell within the scope of items listed for seizure in the warrant. Not only was it attached to the computer seized, the affidavit clearly identified the use of a Sprint network in transmitting the video. Moreover, the search warrant permitted the seizure of "[a]ny electronic, magnetic, optical,

---

[3]The Court notes that this Circuit's determination of probable cause in cases involving child pornography often involves such a common sense approach. *See United States v. Froman,* 355 F.3d 882, 890-91 (5th Cir. 2004) ("We agree with the district court that is common sense that a person who voluntarily joins a group such as Candyman, remains a member of the group for approximately a month without cancelling his subscription, and uses screen names that reflect his interest in child pornography, would download such pornography from the website and have it in his possession.").

electrochemical, or high-speed data processing device," "communication facilities directly relating to or operating in conjunction with such device," and "[c]omputers, personal computers, computer peripherals [and] modems." Dkt. 25-2 at 2. The Court finds that the Air Card and all items seized fell within the scope of the materials to be seized as listed in the affidavit. Therefore, suppression on those grounds is not appropriate here.

Finally, even if probable cause had been insufficient here – which the Court finds that it was not – having heard the testimony offered, the Court finds that sufficient evidence was presented to show that the officers executing the warrant acted in good faith reliance on the search warrant. Under the good faith exception to the exclusionary rule, evidence is admissible if it is obtained by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. *United States v. Leon*, 468 U.S. 897, 927-28 (1984). Nothing was presented to the Court to indicate that any of the information contained in the affidavit was deliberately false or misleading. Defendant has not made any showing of bad faith by any law enforcement officer connected to this case. Therefore, the search will not be suppressed on that basis.

Finding that the affidavit was based on probable cause, the Court next turns to Defendant's argument that his statements to law enforcement were not voluntarily made. The Fifth Amendment protects an individual's right to be free from compelled self-incrimination. Thus, the Government may use at trial only those confessions that are voluntarily made. 18 U.S.C. § 3501(a); *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). To protect this right, statements

obtained during a custodial interrogation of an accused cannot be used unless the accused has been advised of his right to remain silent and right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 473 (1966). The requirement of *Miranda* that police advise an accused of his rights prior to questioning applies only if the accused is "in custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 445; *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Accordingly, a defendant who voluntarily gives a statement to law enforcement in a non-custodial situation need not be advised of his *Miranda* rights. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The determination of whether a person is in custody for *Miranda* purposes must be made on a case-by-case basis considering all the objective circumstances. *Stansbury*, 511 U.S. at 323, 114 S.Ct. 1526. A suspect is "in custody" for the purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Courtney,* 463 F.3d 333, 337 (5th Cir. 2006) (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988)).

Because Defendant was not under formal arrest in this case, the inquiry is limited to whether Defendant was subjected to a custodial interrogation. In making this determination, the Court must examine all circumstances surrounding the interrogation and make two inquiries: (1) what were the circumstances surrounding the interrogation and (2) given those circumstances, would a reasonable person think he was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995); *United States v. Hurtado*, 899 F.2d 371, 374

(5th Cir. 1990); *United States v. Crawford*, 52 F.3d 1303, 1307 (5th Cir. 1995).

Having reviewed the evidence presented in light of governing authorities, the Court finds that Defendant's interrogation was non-custodial. The law is clear in this Circuit that police questioning an accused in his or her own home is not by itself indicative of a custodial interrogation. *United States v. Hurtado*, 899 F.2d 371, 375 (5th Cir. 1990). In the *Hurtado* case, the defendant was interrogated by six agents in a small room of her home. *Id*. That defendant was not told she was under arrest or that she could not leave. *Id*. Despite her claims that she was nervous and surprised at the time of the search, the court held that psychological pressure due to fear of agents discovering illegal activities is irrelevant. *Id*. Consequently, the Fifth Circuit found that those circumstances did not give rise to a custodial interrogation. *Id.*

Of particular significance to the Court is the case of *United States v. McNair*, which was decided last year in the Western District of Texas, involving the execution of a search warrant on a defendant's home after child pornography was allegedly exchanged via the internet. *United States v. McNair*, 2010 WL 2038297 (W.D. Tex. 2010). In *McNair*, eighteen agents, at least two armed with automatic weapons, arrived at the defendant's home to execute a warrant. *Id*. at 1. There, the interviewing agent gave similar warnings to the defendant that the interview was voluntary, he was not under arrest, and he was free to leave. *Id.* Applying Fifth Circuit precedent, the district court found that the defendant was not in custody for the purposes of *Miranda*, nor was there a restraint on movement tantamount to a formal arrest. *Id*. at 2. Finally, the district court held that a reasonable person would have felt free to terminate the interview. *Id*. While this case is not binding to the

11

Court's decision here, it provides a clear outline of how such facts are interpreted by the courts in this Circuit.

Even in circumstances where an accused was not advised of his or her right to leave the premises, the Fifth Circuit has declined to find a custodial interrogation. *United States v. Crawford*, 52 F.3d 1303, 1307 (5th Cir. 1995). In *Crawford*, the court held that the defendants were not in custody. *Id*. There, the FBI agent testified that the defendants did not ask to leave the premises. *Id*. However, significantly for the purposes of the case at bar, they were not advised that they were free to leave. *Id*. In addition, the defendant in that case was not permitted to answer a phone call during questioning and was prevented from helping customers. *Id*. at 1308. Nonetheless, the court held that the questioning did not give rise to a custodial interrogation. *Id*. at 1308-09.

Here, Defendant was interviewed in his room by *one* law enforcement officer, who Defendant concedes was cordial and not threatening. Although he was armed Detective Rich never brandished his weapon. Rich testified that he repeatedly told Defendant he was free to leave, and the Court finds this testimony to be credible. Further, during the course of the interview, Defendant signed a form titled "Voluntary Statement" and "Subject Not Under Arrest." There is no evidence that Defendant was coerced into giving his statements, and, in fact, the evidence indicates that Defendant was repeatedly advised of the voluntary nature of his statements. While Defendant claims he was not told he was free to leave, nor did he feel free to leave, the Court did not find this testimony to be credible.

Moreover, in determining whether an accused has been subject to a custodial interrogation, the accused's subjective state of mind or impressions are not relevant to the Court's inquiry. *See generally Crawford*, 52 F.3d at 1307 (using a "reasonable person" standard). Therefore, Defendant's purported concern about the well being of his minor charge, L.A. – who no reasonable person would have believed to be in danger solely because he was in the house during the execution of the search warrant or was the subject of some of Rich's questions – cannot factor into the Court's analysis.

Despite differing factual accounts of the interview in question, the Court finds that, in this case, no reasonable person would think that he was not at liberty to terminate the interrogation and leave. Defendant was well-advised of his rights. Rich properly obtained the statement and the Government satisfied its burden of showing that Defendant knowingly and voluntarily gave the statement. Further, Defendant signed a voluntary statement in which he knowingly initialed his right to terminate the interview and his right to an attorney. Defendant conceded that he never requested a lawyer, and Defendant's statement appears to the Court to have been freely and voluntarily given.

Under the totality of the circumstances, the Court views all of these matters to determine whether a reasonable person would have understood that he was not free to leave. *Courtney,* 463 F.3d at 337; *Bengivenga*, 845 F.2d at 596. After considering the evidence and testimony presented at the hearing, the Court finds that Defendant's Motion to Suppress should be denied.

## RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress Statements and Evidence Fourth and Fifth Amendment Violations (Dkt. 19) be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within the time period set forth above shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 2nd day of June, 2011.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE